**UNITED STATES v. KING.**

No. 266, Docket 20587.

Circuit Court of Appeals, Second Circuit.

June 24, 1947.

Louis J. Castellano, of Brooklyn, N. Y. (Nathan Sweedler, of New York City, and Denis M. Hurley, of Brooklyn, N. Y., on the brief), for appellant.

Mario Pittoni, Asst. U. S. Atty., of Brooklyn, N. Y. (J. Vincent Keogh, U.S. Atty., of Brooklyn, N. Y., on the brief), for appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Defendant, having been convicted of bribing an officer of the United States in violation of 18 U.S.C.A. § 91, appeals on the grounds that the evidence was insufficient to support the verdict and that the trial judge coerced the jury to produce the result. So far as is material here, the offense denounced by the statute is the giving of money to any officer of the United States with intent to influence his decision on any matter which may be pending before him in his official capacity. Defendant was a civilian assistant night superintendent of carpenters at the Brooklyn Army Base. Lieutenant Fletcher, the army officer in charge of the base carpenter shop, was defendant's immediate superior, and had authority, among other things, to prevent the discharge of carpenters or to reinstate them once they had been discharged. According to the evidence for the prosecution, defendant approached Fletcher four times in late 1944 in a successful attempt to secure the reinstatement of five carpenters.

On November 23, 1944, defendant requested a private interview with Fletcher; and when they had gone from Fletcher's office to a nearby dispensary, he asked if it was possible to secure the reinstatement of the five men who had been laid off. Fletcher answered that "it was probably a difficult thing to do." On November 25, in answer to defendant's inquiry, Fletcher told him that he could have the men reinstated. Thereupon defendant requested that the pay checks of two of the men who, he said, owed him money be given to him. On November 30, Fletcher gave defendant the checks and defendant told Fletcher he would see him the following day. On December 1, defendant requested a private interview with Fletcher and, when they had retired to the dispensary, gave him $70, saying he would get the rest of it later because the men did not receive a very big pay check. Explaining the purpose of the payment, defendant said, "It is for the list of the boys that you helped me out with." The carpenters were reinstated about November 30, but the exact time was not stated. Later Fletcher, who had been cooperating with the Federal Bureau of Investigation, turned the money over to them.

Defendant admitted seeking the reinstatement of the men and the payment of the $70, but, with corroboration from his wife, maintained that he gave Fletcher the money as a loan on December 16. He argues that in any event the transfer of the money was long after the men had been reinstated and hence could not have been with the necessary criminal intent.

**596**

■ Upon this evidence the jury was justified in its verdict. From the clandestine nature of the first and last interviews and Fletcher's remarks at the first interview, the jury could reasonably infer that to the understanding of both parties a breach of duty on Fletcher's part was being requested, and that defendant intended from the beginning to pay Fletcher for his action and intended Fletcher to know of this and to expect payment. Defendant himself brought out that others were offering bribes to Fletcher. There was not such friendship between the two that defendant had reason to expect the reinstatements as a favor. The fact that the men might have been reinstated before the money was actually paid does not of necessity make the payment any less a bribe. Moreover, it may have served as insurance against the possibility of a later change of Fletcher's attitude toward the men. Finally the jury was not obliged to believe defendant's story of a loan, especially since F. B. I. Agent Sorensen testified that he received the money from Fletcher eleven days before the date of the claimed loan.

■ Defendant's contention that the judge coerced the jury is entirely without substance. After the jury had been out about 5¾ hours, it returned and announced a disagreement. Thereupon the court directed further consideration, saying that, while no juror should be coerced in arriving at a verdict, nevertheless he should not have pride of opinion, and that jurors should fairly discuss the evidence and try to arrive at a verdict. This was certainly mild enough and well within the court's discretion. United States v. Winters, 2 Cir., 158 F.2d 674; United States v. Olweiss, 2 Cir., 138 F.2d 798, certiorari denied Olweiss v. United States, 321 U.S. 744, 64 S.Ct. 483, 88 L.Ed. 1047; United States v. Novick, 2 Cir., 124 F.2d 107, 110, certiorari denied Novick v. United States, 315 U.S. 813, 62 S.Ct. 795, 86 L.Ed. 1212. The court was also justified, in response to a later question of a juror, in instructing them that they had no concern and nothing to do with any question as to possible charges in the future against Lieutenant Fletcher. Defendant also criticizes the

charge on the score of inadequate discussion of the intent to bribe. The point was not raised by objection at the time; in any event, we see no deficiency in the charge in this respect.

Affirmed.